IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brian Keith Herron,<br><br>                Petitioner,<br><br>v.<br><br>J.T. Wartle, Warden,<br><br>                Respondent. | No. CV-13-00358-TUC-JGZ (EJM)<br><br>**REPORT AND RECOMMENDATION** |

Pending before the Court is Petitioner Brian Keith Herron's *pro se* First Amended Petition under 28 U.S.C. § 2241 for a Writ of Habeas Corpus. (Doc. 6). Petitioner challenges the disciplinary hearing officer's imposition of sanctions for infractions Petitioner committed while incarcerated, including loss of good conduct time and monetary restitution. *Id*. Respondent filed a Return and Answer (Doc. 13), and Petitioner filed a Reply (Doc. 19). Also pending before the Court are Petitioner's Motion for Temporary Injunction (Doc. 31) and Motion for Request of Time Frame (Doc. 32). Petitioner's Motion for Temporary Injunction requests the Court to order Respondent to stop withdrawing funds from Petitioner's account to be credited toward the restitution. (Doc. 31). Respondent filed a Notice of Non-Response to Petitioner's Motion for Temporary Injunction and Motion for Request of Time Frame. (Doc. 33).

As an initial matter, the Court notes that the proper respondent in an action for habeas corpus is the Petitioner's custodian, who at the time this action was filed was

Louis W. Winn, Jr. *See* 28 U.S.C. § 2242; *Rumsfeld v. Padilla*, 542 U.S. 426, 435–36 (2004). The Court takes judicial notice that Louis W. Winn, Jr. is no longer warden of United States Penitentiary—Tucson ("USP—Tucson"). The Court will substitute the new Warden of USP—Tucson, J. T. Shartle, as Respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

Pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure, this matter was referred to Magistrate Judge Markovich for Report and Recommendation. The Magistrate Judge recommends that the District Court deny the Petition under 28 U.S.C. § 2241 for a Writ of Habeas Corpus (Doc. 6), and deny Petitioner's Motion for Temporary Injunction (Doc. 31) and Motion for Request of Time Frame (Doc. 32) as moot.

## I. PROCEDURAL BACKGROUND

Petitioner is currently incarcerated at U.S. Penitentiary McCreary in Pine Knot, Kentucky. In light of Petitioner's incarceration at USP—Tucson in Tucson, Arizona at the time of the Petition's filing, this Court retains jurisdiction to consider the Petition. *See Francis v. Rison*, 894 F.2d 353 (9th Cir. 1990) ("jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change.").

Petitioner is currently serving a 420 month sentence for attempted bank robbery, armed bank robbery, escape, assault on a United States officer, and assault on a person assisting a United States officer. (Doc. 13 Ex. A Attach. 2). Petitioner's projected release date is December 5, 2033. *Id.*

Petitioner filed his *pro se* First Amended Petition under 28 U.S.C. § 2241 for a Writ of Habeas Corpus on August 13, 2013. (Doc. 6). Petitioner challenges a disciplinary conviction that resulted in a loss of good conduct time ("GCT") credits and monetary restitution. Petitioner alleges three grounds by which his due process rights were violated:[1] (1) "sanctions of loss of good time credits for reasons not directly related to the infraction was/is in bad faith and retaliation and does in fact impose an atypical and

---

[1] Petitioner presents all three arguments in one ground for relief.

- 2 -

significant hardship upon [Petitioner]"; (2) the monetary restitution assessed is not directly related to the infraction and is arbitrary because monetary fines were not approved or codified under the Code of Federal Regulations or implemented into the Bureau of Prisons ("BOP") program to be imposed by the Disciplinary Hearing Officer ("DHO") at the time of Petitioner's disciplinary hearing; and (3) the monetary restitution was arbitrarily calculated without proper receipts and documentation. (Doc. 6 at 4-5). Petitioner requests that the Court issue an order expunging the BOP disciplinary hearing sanction of monetary restitution in the amount of $2138.20 and restore his loss of 94 days GCT. *Id*. at 10.

## II.   FACTUAL BACKGROUND

On May 6, 2009, Petitioner was being transported to his cell by Officers Brown and Reynolds. (Doc. 13 Ex. B Attach. 2 at 6 [Incident Report]). After his handcuffs were removed and the cell door was shut, Petitioner became disruptive and destructive. *Id*. He broke off pieces of his walker and threatened to attack Officer Brown, and then used the piece of his walker to break apart his bed. *Id*. Petitioner "then used a long piece of metal from his bed as a hammer type of tool, breaking light fixtures, windows in his room, the shower light, and part of his call system that is tied to the nurse's station." *Id*. While destroying the items in his room, Petitioner stated: "you got me, and now I'm gonna get you," "come on in here, and I'll get you, motherfucker," and that he "was from the pen" and "a gangster." *Id*. Petitioner was charged with BOP Code No. 104, possession, manufacture, or introduction of a weapon; Code No. 203, threatening another with bodily harm; and Code No. 218, destroying, altering, or damaging property valued in excess of $100. *Id*.

Officer Brown completed an Incident Report (No. 1865559) on May 6, 2009 at 1:36 p.m. *Id*. A copy of the incident report was delivered to Petitioner that same day. *Id*. Lieutenant Testerman investigated and advised Petitioner of his rights. (Doc. 13 Ex. B Attach. 2 at 8). Petitioner chose to make the following statement during the investigation:

"I destroyed the room, I was mad but I didn't say anything." *Id*.[2] Petitioner did not request any witnesses. *Id*.

The Unit Disciplinary Committee ("UDC") referred the incident to the DHO for further hearing based on the eyewitness accounts of staff and the evidence presented, and because Petitioner allegedly stated that he destroyed the room because he was mad. (Doc. 13 Ex. B Attach. 2 at 7). The UDH recommended that the DHO impose suspended sanctions from two prior incident reports, and additionally disallow the maximum amount of GCT, impose 30 days of disciplinary segregation, restrict commissary and phone privileges for 60 days, and order restitution for the damage caused. *Id*.

On June 2, 2009, Petitioner had a DHO hearing before DHO Kevin Nikes. (Doc. 13 Ex. B Attach. 2 at 2-5 [Discipline Hearing Officer Report]). DHO Nikes advised Petitioner of his rights before the DHO hearing, and he indicated that he understood them. *Id*. at 3. Petitioner requested a staff representative, Dr. Weiner, who stated that she spoke with Petitioner prior to the DHO hearing. *Id*. at 2. Petitioner denied the charges against him and made the following statement:

> I came back from 10 building and I went back to my floor. 3/2 I asked for lunch and they said we need to check your cell first. And then the officer said "no you can wait to eat, your [sic] not special." I took that as a sign of him being disrespectful and talking to me like a child. I attempted breaking the light. I disassembled the trapeze bed parts by taking the screws out. I didn't manufacture a weapon, I didn't take apart anything to make a weapon. The officer wasn't even there, I didn't threaten anyone.

*Id*. at 2. Petitioner also had two witnesses testify on his behalf.[3] The first witness was Nurse Hedges, who stated "I saw inmate Herron with a metal object in hand, knocking out the glass windows in a cell." *Id*. The second witness was inmate Chad Sigman, who stated "I only observed the damage after inmate Herron had destroyed the room." *Id*.

---

[2] Petitioner disputes that he made this statement. (Doc. 19 at 16 ¶ 3).

[3] Petitioner denies that he requested any staff or inmate witnesses. (Doc. 19 at 16 ¶ 4).

- 4 -

In addition to the testimony of Petitioner and the two witnesses, DHO Nikes also considered documentary evidence, including photographs of the damage, Officer Reynold's memorandum, and staff emails. *Id.* at 2-3. DHO Nikes found Petitioner guilty of the prohibited acts of possession, manufacture, or introduction of a weapon (Code No. 104), threatening another with bodily harm (Code No. 203), and destroying, altering, or damaging property valued in excess of $100 (Code No. 218). *Id.* at 2, 4. DHO Nikes imposed sanctions for each offense as follows: Code No. 104: loss of 40 days GCT, 60 days disciplinary segregation, and loss of commissary, phone, and visiting privileges for 90 days; Code No. 203: loss of 27 days GCT, 30 days disciplinary segregation, and loss of commissary and phone privileges for 60 days; Code No. 218: loss of 27 days GCT, 30 days disciplinary segregation, loss of commissary and phone privileges for 60 days, and $2138.20 monetary restitution. *Id.* at 4. On July 22, 2009, DHO Nikes signed the DHO report and it was delivered to Petitioner on August 7, 2009. *Id.* at 5.

Petitioner states that he filed an Administrative Remedy Appeal (552794-R1)[4] and a Regional Administrative Remedy Appeal (552794-R2) (BP-10),[5] and was denied at both levels.[6] (Doc. 19 at 5). Petitioner alleges he gave his Central Office Administrative Remedy Appeal (552794-A1) (BP-11) to the mail room officer at USP—Tucson on November 5, 2009 (Doc. 19 at 17 ¶ 6), but that he did not received a response from the Central Office regarding this appeal (Doc. 19 at 5); (*see* Doc. 19 at 22 [copy of Central Office Administrative Remedy Appeal dated November 5, 2009]). The BP-11 is not stamped with a date reflecting its receipt, and Respondent contends Petitioner never filed it. (Doc. 13 at 12).

---

[4] Respondent notes this appeal was filed on August 17, 2009 and was rejected because it was filed with the incorrect region. (Doc. 13 at 12, citing Ex. A. Attach. 5 at 9).

[5] Respondent states this appeal was filed on August 31, 2009. (Doc. 13 at 12, citing Ex. A. Attach. 5 at 9 (CM/ECF pg. 10)).

[6] The record does not contain copies of either of these appeals.

- 5 -

According to Respondent, "[i]n March and April 2011, Petitioner filed 632303-F1 [Administrative Remedy Appeal] and 632303-R1 [Regional Administrative Remedy Appeal]… Both were rejected, and Petitioner did not pursue them as required [by filing a Central Office Administrative Remedy Appeal." (Doc. 13 at 12) (citing Ex. A. Attach. 5 at 13).

On October 7, 2011, Petitioner filed another Administrative Remedy Appeal, contending the BOP was wrongfully withholding funds from his inmate trust account and demanding a full refund of the monies withheld (660692-F1) (BP-9).[7] (Doc. 6 at 20 [Request for Administrative Remedy]; Doc. 19 at 5). On November 2, 2011, the Complex Warden denied the Appeal, noting "[t]he time frame to appeal the severity of the sanctions imposed by the DHO has long passed." (Doc. 6 at 21). On November 14, 2011, Petitioner filed a Regional Administrative Remedy Appeal (660692-R1) (BP-10), which was denied on December 8, 2011.[8] (Doc. 6 at 22 [Regional Administrative Remedy Appeal]; Doc. 19 at 5). On February 27, 2012, Petitioner filed a Central Office Administrative Remedy Appeal (660692-A2) (BP-11), which was denied on March 1, 2013.[9] (Doc. 6 at 24 [Central Office Administrative Remedy Appeal]; Doc. 19 at 5).

Petitioner filed several Freedom of Information Act requests requesting copies of purchase orders and receipts for the replacement of the damaged items that he was ordered to pay restitution for, and copies of the records relied on by DHO Nikes in determining the amount of restitution. (Doc. 6 at 5 ¶ 5).[10] In a letter to Petitioner dated August 25, 2011, Richard W. Schott, Regional Counsel for the Federal Bureau of Prisons, stated that "staff have made a thorough search for the records you requested [for the purchase orders and receipts], and no documents could be located." (Doc. 6 at 15). In a

---

[7] The BP-9 was stamped received on October 17, 2011.

[8] The BP-10 does not have a date stamp reflecting its receipt.

[9] The BP-11 was stamped received on March 12, 2012.

[10] Petitioner does not provide evidence showing when the FOIA requests were filed.

second letter to Petitioner dated December 15, 2011, Mr. Schott noted that records relied upon by the DHO in determining monetary restitution were located and could be released to Petitioner. *Id*. at 16-17.

Petitioner instituted the current proceeding on May 17, 2013.  (Doc. 1).

**III.    ANALYSIS**

A. Jurisdiction

"Federal courts are always 'under an independent obligation to examine their own jurisdiction,' … and a federal court may not entertain an action over which it has no jurisdiction." *Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000) (*quoting FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990), *overruled in part on other grounds by City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C*., 541 U.S. 774 (2004)). "Generally, motions to contest the legality of a sentence must be filed under § 2255 in the sentencing court, while petitions that challenge the manner, location, or conditions of a sentence's execution must be brought pursuant to § 2241 in the custodial court." *Id*. at 864. Therefore, a proper characterization of the petition is necessary to determinate jurisdiction. *Id*.

Additionally, the judicial power of this and all federal courts is limited to actual cases or controversies. U.S. Const. art. III; *see also Flast v. Cohen*, 392 U.S. 83, 94-95 (1968); *Munoz v. Rowland*, 104 F.3d 1096, 1097 (9th Cir. 1997). "A petition for writ of habeas corpus is moot where a petitioner's claim for relief cannot be redressed by a favorable decision of the court issuing a writ of habeas corpus. *Salazar-Torres v. Benov*, 2014 WL 4960586 (E.D. Cal.) (*citing Burnett v. Lampert*, 432 F.3d 996, 1000-01 (9th Cir. 2005)); *see also Spencer v. Kemna*, 523 U.S. 1, 18 (1998).

Here, Petitioner does not claim that the sentencing court imposed an illegal sentence; rather, he seeks relief with respect to disciplinary proceedings while incarcerated at a federal facility. As such, Petitioner is challenging the manner, location or condition of the execution of his sentence. *See e.g., Rogers v. United States*, 180 F.3d 349 (1st Cir. 1999) (§ 2241 petition is appropriate vehicle to challenge the correctness of

a jail-time credit determination, once administrative remedies have been exhausted); *Ramirez v. Galaza*, 334 F.3d 850, 858 (9th Cir. 2003) ("a prisoner may seek a writ of habeas corpus under 28 U.S.C. § 2241 for 'expungement of a disciplinary finding from his record if expungement is likely to accelerate the prisoner's eligibility for parole'") (*quoting Bostic v. Carlson*, 884 F.2d 1267, 1269 (9th Cir. 1989)); *Tucker v. Carlson*, 925 F.2d 330, 332 (9th Cir. 1991) (a prisoner's challenge to the "manner in which his sentence was executed…[is] maintainable only in a petition for habeas corpus filed pursuant to 28 U.S.C. § 2241"); *Bostic v. Carlson*, 884 F.2d at 1269 ("Habeas corpus jurisdiction is also available for a prisoner's claims that he has been subjected to greater restrictions of his liberty, such as disciplinary segregation without due process of law"). Such a challenge must be brought pursuant to § 2241 in the custodial court. At the time of filing the Petition, Petitioner was incarcerated at USP—Tucson in Arizona. Accordingly, this Court has jurisdiction over this matter. *Francis v. Rison*, 894 F.2d 353 (9th Cir. 1990).

### B. Exhaustion

#### i. In general

As a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241. *Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012). "The requirement that federal prisoners exhaust administrative remedies before filing a habeas corpus petition was judicially created; it is not a statutory requirement." *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990), *overruled on other grounds by Reno v. Koray*, 515 U.S. 50, 54–55 (1995). "Nevertheless, '[p]rudential limits like jurisdictional limits and limits on venue, are ordinarily not optional.'" *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (alterations in original) (*quoting Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006)).

> Courts may require prudential exhaustion if "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the

> administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review."

*Id.* (*quoting Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)).

"When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011) (citations omitted). Exhaustion may be excused if pursuing an administrative remedy would be futile. *Fraley v. United States Bureau of Prisons*, 1 F.3d 924, 925 (9th Cir. 1993).

If a prisoner is unable to obtain an administrative remedy because of his failure to appeal in a timely manner, then the petitioner has procedurally defaulted his habeas corpus claim. *See Nigro v. Sullivan*, 40 F.3d 990, 997 (9th Cir. 1994) (*citing Francis, Francis v. Rison*, 894 F.2d 353, 354 (9th Cir. 1990)); *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986). If a claim is procedurally defaulted, the court may require the petitioner to demonstrate cause for the procedural default and actual prejudice from the alleged constitutional violation. *See Francis*, 894 F.2d at 355 (suggesting that the cause and prejudice test is the appropriate test); *Murray v. Carrier*, 477 U.S. 478, 492 (1986) (cause and prejudice test applied to procedural defaults on appeal); *Hughes v. Idaho State Bd. of Corrections*, 800 F.2d 905, 906–08 (9th Cir. 1986) (cause and prejudice test applied to *pro se* litigants).

### ii. BOP Administrative Procedures

The BOP has established an Administrative Remedy Program "to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C. F.R. § 542.10(a). Before filing a formal administrative grievance, an inmate is to "first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue...." 28 C.F.R. § 542.13. A request for informal resolution is submitted using a BP–8 form. *See Nunez v. Duncan*, 591 F.3d 1217, 1219 (9th Cir. 2010).

The formal grievance system under the Administrative Remedy Program consists of three levels of review:

In the first level of review, an inmate files a formal Administrative Remedy Request written on a BP–9 form. The BP–9 form must be submitted to the Warden within 20 calendar days following the date on which the basis for the request occurred. 28 C.F.R. § 542.14(a); *see also Nunez*, 591 F.3d at 1219 ("The BP–8 and BP–9 are linked. Both forms involve a complaint arising out of the same incident, and both forms must be submitted within 20 calendar days of the date of that incident."). However, if the inmate is appealing a DHO decision, the BP–9 is submitted to the Regional Director rather than the Warden. 28 C.F.R. § 542.14(d)(2).

Second, if an inmate is dissatisfied with the Warden's response, the inmate may submit an appeal on a BP–10 form to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response to the inmate's Administrative Remedy Request. 28 C.F.R. § 542.15(a).

Third, "an inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP–11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response." 28 C.F.R. § 542.15(a).

The deadlines contained within this process may be extended upon request by the inmate and a showing of a valid reason for delay. 28 C.F.R. § 542.15(a); 28 C.F.R. § 542.14(b). An appeal is considered filed on the date it is logged in the Administrative Remedy Index as received. 28 C.F.R. § 542.18. Once an appeal is filed, a Regional Director shall respond within 30 days; General Counsel shall respond with 40 days. *Id.* "If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." *Id.*

Here, Respondent states that "Petitioner failed to exhaust his administrative remedies as to the Incident Report, the DHO hearing, and the sanctions imposed." (Doc.

13 at 13). Respondent further asserts that "[t]he only issue as to which Petitioner can be said to have exhausted his administrative remedies is the withholding of moneys to pay the properly ordered restitution." *Id*. This argument appears to be based on Respondent's contention that Petitioner only completed all three levels of appeal for administrative remedy no. 660692, in which Petitioner claimed funds were being wrongfully withheld from his inmate trust account and demanded a full refund. (*See* Doc. 6 at 20).

Although Petitioner's scattered and repetitive approach to seeking administrative remedies makes the record somewhat unclear, he does appear to have appealed at every level. Petitioner provides a copy of the BP-11 form for appeal no. 552794, which Petitioner avers he submitted for mailing on November 5, 2009. (Doc. 19 at 17 ¶ 6; 22). In appeal no. 552794, Petitioner claimed that he was not provided with receipts or documentation to support the restitution order, and that the sanctions of loss of GCT and monetary restitution were not directly related to the infractions that Petitioner was charged with. (Doc. 19 at 22). These are the same arguments that Petitioner now makes in his § 2241 petition. Based on the record before the Court, it appears that Petitioner sent his BP-11 form for appeal no. 552794, irrespective of whether the Central Office actually received it. Further, there is no record that General Counsel ever responded to Petitioner's BP-11 appeal. As such, it was appropriate for Petitioner to consider "the absence of a response to be a denial at that level" when he filed his § 2241 petition. *See Martin v. Fed. Bureau of Prisons*, 2011 WL 6057508, *2 (C.D. Cal. 2011) ("If General Counsel fails to respond within 40 days, the inmate can assume that the appeal was denied and proceed with a lawsuit."). Additionally, the Ninth Circuit Court of Appeals has recognized that:

> the requirement of exhaustion of remedies [is to] aid judicial review by allowing the appropriate development of a factual record in an expert forum; conserve the court's time because of the possibility that the relief applied for may be granted at the administrative level; and allow the administrative agency an opportunity to correct errors occurring in the course of administrative proceedings.

*Ruviwat v. Smith*, 701 F.2d 844, 845 (9th Cir. 1983). In this case, the factual record is adequately developed, and nothing in the record suggests that further administrative review would result in any changes. Accordingly, the Court finds the Petitioner's claims exhausted; however, even if the exhaustion is faulty, it shall be excused and the Court will reach the merits.

### C.  Due Process

Petitioner asserts that his due process rights were violated because (1) the sanction of loss of GCT is not directly related to the infraction and was made in bad faith and retaliation against Petitioner; (2) the monetary restitution assessed is not directly related to the infraction and is arbitrary because the DHO did not have the authority to impose monetary fines at the time of Petitioner's disciplinary hearing; and (3) the monetary restitution was arbitrarily calculated without proper receipts and documentation. (Doc. 6 at 4-5).

"Due process in a prison disciplinary hearing is satisfied if the inmate receives written notice of the charges, and a statement of the evidence relied on by the prison officials and the reasons for disciplinary action." *Zimmerlee v. Keeny*, 831 F.2d 183, 186 (9th Cir. 1987) (*citing Wolff v. McDonnell*, 418 U.S. 539, 563–66 (1974)). Additionally, "[t]he inmate has a limited right to call witnesses and to present documentary evidence when permitting him to do so would not unduly threaten institutional safety and goals." *Id*. (citations omitted). "Prison disciplinary proceedings[, however,] are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings do[] not apply." *Wolff*, 418 U.S. at 556.

Once the minimal procedural requirements of *Wolff* are met, the district court must ask "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent, Mass. Corrections Inst. v. Hill*, 472 U.S. 445, 455–56 (1985). "[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board." *Id*. "Ascertaining whether this standard is satisfied does not require examination of the entire record,

independent assessment of the credibility of witnesses, or weighing of the evidence." *Id*. Indeed, "[t]he standard is 'minimally stringent' only requiring '<u>any</u> evidence in the record that <u>could</u> support the conclusion reached by the disciplinary board.'" *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987) (*citing Hill*, 472 U.S. at 454–56) (emphasis added in *Cato*).

### i. Loss of Good Conduct Time

Petitioner asserts that DHO Nikes imposed a loss of 94 days GCT, but that this sanction was not directly related to the infractions Petitioner was charged with and that the sanction was imposed in bad faith and retaliation against Petitioner. (Doc. 6 at 4). Petitioner also claims the loss of GCT imposes "an unlawful and significant hardship upon him that unlawfully affects his duration of confinement and his release date." *Id*.

Section 3625(b), Title 18, of the United States Code governs the timing of federal prisoners' release from custody, including their eligibility for good conduct time. This section was enacted as part of the Sentencing Reform Act of 1984, 98 Stat. 1987, 18 U.S.C. § 3551 *et seq.*, 28 U.S.C. §§ 991–998 ("SRA"), "a comprehensive law that reformed federal sentencing practice and directed the newly create United States Sentencing Commission 'to devise guidelines to be used for sentencing' in district courts." *Barber v. Thomas*, 560 U.S. 474, 481–82 (2010). The SRA was part of the Comprehensive Crime Control Act of 1984 ("CCCA"), which repealed the previous statutes governing "good time." Pub. L. No. 98-473; *see also Brown v. McGrew*, 2013 WL 6512948, * 4 (C.D. Cal. Dec. 12, 2013) (reviewing enactment of 18 U.S.C. § 3624(b) and amendments thereto). "For inmates serving a sentence for offenses committed on or after November 1, 1987, but before September 13, 1994, the Bureau will award 54 days credit toward service of sentence (good conduct time credit) for each year served." 28 C.F.R. § 523.20(a). "This amount is prorated when the time served by the inmate for the sentence during the year is less than a full year." *Id.* "For inmates serving a sentence for offenses committed on or after September 13, 1994, but before April 26, 1996, all yearly awards of good conduct time will vest for inmates who have earned, or are making

satisfactory progress . . . toward earning a General Educational Development (GED) credential." 28 C.F.R. § 523.20(b).

On April 26, 1996, Section 3624(b) was amended by the Prison Litigation Reform Act ("PLRA"). *See* PL 104–134, April 26, 1996, 110 Stat 1321. Section 3624(b) provides in relevant part:

> (1) Subject to paragraph (2), a prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations. Subject to paragraph (2), if the Bureau determines that during that year, the prisoner has not satisfactorily complied with such institutional regulations, the prisoner shall receive no such credit toward service of the prisoner's sentence or shall receive such lesser credit as the Bureau determines to be appropriate. In awarding credit under this section, the Bureau shall consider whether the prisoner, during the relevant period, has earned, or is making satisfactory progress toward earning, a high school diploma or an equivalent degree. Credit that has not been earned may not later be granted. Subject to paragraph (2), credit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence.
>
> (2) Notwithstanding any other law, credit awarded under this subsection after the date of enactment of the Prison Litigation Reform Act shall vest on the date the prisoner is released from custody.

18 U.S.C. § 3624(b); *see also* 28 C.F.R. § 523.20(c). Unlike previous amendments, GCT awarded to an inmate under the PLRA does not vest under any circumstances until "the date the prisoner is released from custody." 18 U.S.C. § 3624(b)(2). "Thus, under the PLRA, all of a prisoner's cumulative good-conduct time can be taken by the BOP as a sanction for a prison disciplinary action." *Brown*, 2013 WL 6512948 at *4 (citing 18 U.S.C. § 3624(b)(2); 28 C.F.R. § 523.20(e); *Gary v. Fed. Bureau of Prisons*, 2010 WL 1611020, *8 (E.D. Cal. Apr. 21, 2010).

Here, Petitioner's conviction stems from a December 23, 2002 offense. (Doc. 13 Ex. A Attach. 2 at 2). As such, the PLRA applies to his sentence. Petitioner's violation for BOP Code No. 104 is classified as a greatest severity prohibited act. (Doc. 13 Ex. B Attach. 1 at 18 [BOP Program Statement]). The prison can sanction a prisoner who commits a greatest severity prohibited act by "[d]isallow[ing] ordinarily between 50 and 75% (27–41 days) of good conduct time credit available for [a] year[.]" *Id.* at 17 [Sanction B.1]. For PLRA inmates committing greatest category offenses, Sanction B.1 is mandatory. *Id.* at 14 [BOP Program Statement § 541.13(a)(1)]. Pursuant to these regulations, the DHO imposed a sanction disallowing 40 days of GCT for Petitioner's violation of BOP Code No. 104. (Doc. 13 Ex. B Attach. 2 at 4).

Petitioner's violations for BOP Code Nos. 203 and 218 are classified as high severity offenses. (Doc. 13 Ex. B Attach. 1 at 20 [BOP Program Statement]). The prison can sanction a prisoner who commits a high severity prohibited act by "[d]isallow[ing] ordinarily between 25 and 50% (14–27 days) of good conduct time credit available for [a] year[.]" *Id.* [Sanction B.1]. For PLRA inmates committing high category offenses, Sanction B.1 is mandatory. *Id.* [BOP Program Statement § 541.13(a)(2)]. Pursuant to these regulations, the DHO imposed a sanction disallowing 27 days of GCT for each offense. (Doc. 13 Ex. B Attach. 2 at 4).

Petitioner has not pointed to any rules, regulations or other authority stating that the DHO could not impose Sanction B.1 to disallow a total of 94 days GCT for the three infractions Petitioner committed. As the court noted in *Brown*, "[i]ndeed, such a rule would appear to conflict with the PLRA, which states that good-conduct time does not vest until a prisoner is released from prison, and thus the DHO can sanction a prisoner either by forfeiting good-conduct time that the prisoner has already earned or prospectively disallowing good-conduct time that a prisoner has not yet earned." *Brown*, 2013 WL 6512948 at *5 (citations omitted); *see also* 18 U.S.C. § 3624(b). Petitioner also fails to provide any evidence as to how this sanction was imposed in bad faith or in

1 retaliation against him. Accordingly, the undersigned recommends that Petitioner's claim
2 regarding the loss of 94 days GCT must fail.

### ii. Monetary Restitution

Petitioner presents three arguments regarding the validity of the monetary restitution. (Doc. 6 at 4-5). Petitioner first asserts that the monetary restitution sanction imposed was not directly related to the infractions he was charged with and is therefore arbitrary. Second, Petitioner argues that fines were not approved by the C.F.R. or B.O.P. for the DHO to impose at the time of Petitioner's disciplinary hearing. Third, Petitioner alleges a lack of proper receipts and documentation to support the restitution amount.

### 1. Relation of Sanction to Infraction

Petitioner contends that the monetary restitution award is arbitrary because it is not directly related to the infractions he was charged with. (Doc. 6 at 4-5). Petitioner also states that "[t]he sanctions […] are not directly related to the infraction(s), as stated by DHO Nikes in his Report." (Doc. 19 at 11).

As an initial matter, the Court notes that Petitioner appears to be confused by the language used in the DHO report. Under "Reason for Sanction or Action Taken," and in reference to Petitioner's charge of destroying government property, DHO Nikes wrote: "Although not directly related to the infraction, privileges were taken to deter the inmate from this behavior in the future." (Doc. 13 Ex. B Attach. 2 at 4). DHO Nikes was referring to the fact that, in addition to a loss of GCT and monetary restitution, Petitioner was also sanctioned to a loss of commissary and phone privileges for 60 days. These are the sanctions DHO Nikes was referring to in noting that the loss of privileges was not directly related to Petitioner's infraction for destruction of government property. DHO Nikes was not stating that monetary restitution was unrelated to the infraction. Further, the BOP Program Statement specifically authorizes the DHO to "impose a loss of privilege sanction not directly related to the offense, provided there is a belief that the imposed sanction … is viewed as having a significant impact on the inmate's future behavior." (Doc. 13 Ex. B Attach. 1 at 33).

Regarding the monetary restitution award, Petitioner was charged with BOP Code No. 218, destruction of government property valued in excess of $100, and was sanctioned to pay $2,138.20 in restitution. (Doc. 13 Ex. B Attach. 2 at 4). Code No. 203 is classified as a high category offense. (Doc. 13 Ex. B Attach. 1 at 20). The prison can sanction a prisoner who commits a high category prohibited act by ordering the prisoner to make monetary restitution (*Id.* [Sanction E]), and the BOP Program Statement specifies that the DHO "shall impose and execute one or more of" the sanctions listed for high category offenses (*Id.* at 14).

Petitioner has not pointed to any rules, regulations or other authority stating that the DHO could not impose Sanction E to require Petitioner to make monetary restitution for his violation of BOP Code No. 213. Nor has Petitioner presented any argument as to how the sanction of monetary restitution fails to relate to his actions of destroying government property and the costs to repair or replace that property. Accordingly, the undersigned recommends that Petitioner's claim that the restitution sanction was arbitrarily imposed be denied.

2. Authority of DHO to Impose Restitution

Petitioner contends that "monetary fines were not yet approved and codified under the Code of Federal Regulations or implemented into the BOP program statement(s) to be imposed by DHO's at the time of said disciplinary hearing." (Doc. 6 at 5).

Pursuant to the BOP Program Statement manual, "[t]he DHO may direct that an inmate reimburse the U.S. Treasury for any damage to U.S. Government property that the individual is determined to have caused or contributed to." (Doc. 13 Ex. B Attach. 1 at 32). This provision went into effect November 3, 2007 (*Id.*), and was thus applicable at the time of Petitioner's disciplinary hearing on June 2, 2009. Further, as noted in Section 1. above, the BOP Program Statement specifically lists monetary restitution as one of the sanctions that may be imposed for high category prohibited acts. (Doc. 13 Ex. B Attach. 1 at 20 [Sanction E]).

Petitioner provides no evidence to support his claim that the DHO lacked the authority to impose a monetary restitution sanction against him, and the BOP Program Statement specifically authorizes the DHO to impose restitution for high category prohibited acts. Accordingly, the undersigned recommends that Petitioner's claim regarding the authority of the DHO to impose restitution be denied.

### 3. Sufficiency of the Evidence

Petitioner asserts that the staff emails DHO Nikes used to calculate the amount of restitution "DO NOT state any cost for repair/replace light fixtures and windows but yet DHO Nikes stated in his report … that staff e-mails itemize their costs to be $600.00 dollars." (Doc. 6 at 5). Petitioner further contends the restitution amount was arbitrarily calculated without proper receipts and documentation. *Id.*

At the DHO hearing, DHO Nikes reviewed photographs of the damaged cell and staff emails itemizing the cost to repair or replace the items Petitioner destroyed. (Doc. 13 Ex. B Attach. 2 at 3). Copies of the photographs and staff emails are included with the DHO report. *Id*. at 9-14. The items to be repaired or replaced included: nurse call system $158.20, walker $40.00, bed trapeze $1,340.00, and light fixtures and windows $600.00. *Id*. at 3. The total cost to repair and replace the items was $2,138.20, the amount that Petitioner was ordered to pay in restitution. *Id*.

Petitioner cites *Howard v. Copenhaver*, 2015 WL 404092 (E.D. Cal. Jan. 28, 2015), yet the Court's finding in that case undermines Petitioner's arguments. In *Howard*, the petitioner argued there was insufficient evidence of the value of the television he was ordered to pay restitution for. The Court disagreed, noting the *Hill* "some evidence" standard was met where an officer provided a written statement of the value and Best Buy provided a price quote. *Id*. at *5. Moreover, the Court noted that "regardless of whether Petitioner was provided proof of the value of the television, any such error was harmless as Petitioner has not provided any argument that the television was not worth over $100."[11] *Id*. Here, as in *Howard*, the "some evidence" standard was met through the

---

[11] In *Howard*, the petitioner was charged with destroying government property

- 18 -

staff emails submitted to DHO Nikes detailing the costs to replace or repair the items Petitioner destroyed. In addition, while Petitioner may find the emails unsatisfactory to establish the proof of the replacement and repair costs, Petitioner has provided no evidence that these charges are inaccurate, and there is simply no requirement that purchase orders or receipts are required to meet the "some evidence" standard.[12]

In sum, the Court finds that "some evidence" supports the DHO's findings and "the record is not so devoid of evidence that the findings of the [DHO] were without support or otherwise arbitrary." *Superintendent v. Hill*, 472 U.S. 445, 457 (1985). Accordingly, the undersigned recommends that the Court deny Petitioner's claim.

### D. Conclusion

In light of the foregoing, the Court finds that the due process requirements as delineated by *Wolff* were met in this case. Additionally, the Court finds that the DHO findings were supported by "some evidence" as required by *Hill*, *supra*. Therefore, the undersigned recommends that Petitioner's Petition (Doc. 6) be denied.

Finally, "the plain language of [28 U.S.C.] §2253(c)(1) does not require a petitioner to obtain a [certificate of appealability] in order to appeal the denial of a §2241 petition." *Harrison v. Ollison*, 519 F.3d 952, 958 (9th Cir. 2008). "Nor is there any other statutory basis for imposing a [certificate of appealability] requirement on legitimate §2241 petitions. Although state prisoners proceeding under §2241 must obtain a [certificate of appealability], *see* §2253(c)(1)(A), there is no parallel requirement for federal prisoners." *Id.* Accordingly, because Petitioner is a federal prisoner bringing a legitimate §2241 petition, a certificate of appealability is not required.

---

having a value in excess of $100, the same violation Petitioner in the present case was charged with (BOP Code No. 218).

[12] Petitioner contends Officer Reynolds told him that "the bed trapeze is not broken—nursing staff put the screws back in it and put it back together—the next inmate that was placed into that cell is using it." (Doc. 19 at 4). This is unsubstantiated hearsay and is insufficient to overcome the evidence presented of the replacement and repair costs for the items Petitioner destroyed. *See Howard*, 2015 WL 404092 at *5 ("The some evidence standard is a low threshold, and will be met even when evidence to the contrary is presented.").

- 19 -

## IV. RECOMMENDATION

For the reasons delineated above, the Magistrate Judge recommends that the District Judge enter an order:

(1) **SUBSTITUTING** J.T. Shartle, Warden, as Respondent for Louis W. Winn, Jr. pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and Rule 43(c)(2) of the Federal Rules of Appellate Procedure; and

(2) **DENYING** Petitioner's First Amended Petition under 28 U.S.C. § 2241 for a Writ of Habeas Corpus. (Doc. 6).

(3) **DENYING** Petitioner's Motion for Temporary Injunction (Doc. 31) as moot.

(4) **DENYING** Petitioner's Request for Status (Doc. 32) as moot.

Pursuant to 28 U.S.C. § 636(b) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). No replies shall be filed unless leave is granted from the District Court. If objections are filed, the parties should use the following case number: CV-13-358-TUC-JGZ

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may result in waiver of the right of review. The Clerk of the Court shall send a copy of this Report and Recommendation to all parties.

Dated this 1st day of September, 2015.

Eric J. Markovich
United States Magistrate Judge